IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-220-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ISIAH KIRKMAN, | ) | |
| | ) | |
| Defendant. | ) | |

On November 23, 2020, Isiah Kirkman ("Kirkman" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 85]. On August 19, 2021, Kirkman, through counsel, filed a supplemental motion for compassionate release [D.E. 88]. On August 25, 2021, the United States responded in opposition [D.E. 89]. As explained below, the court denies Kirkman's motion.

I.

On January 8, 2018, pursuant to a written plea agreement, Kirkman pleaded guilty to (1) attempted interference with commerce by robbery and aiding and abetting (count three) and (2) discharging a firearm in furtherance of a crime of violence and aiding and abetting (count four). See [D.E. 1, 42, 43]. On April 20, 2018, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 61]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Kirkman's total offense level to be 21, his criminal history category to be I, and his advisory guideline range on count three to be 37 to 46 months' imprisonment and 120 months' consecutive imprisonment on count four. See PSR [D.E. 55] ¶¶

64–64; 18 U.S.C. § 924(c)(1)(A)(iii). After granting the government's motion for a downward departure and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Kirkman to 37 months' imprisonment on count three and 76 months' consecutive imprisonment on count four, for a total of 113 months' imprisonment. See [D.E. 73] 3. Kirkman did not appeal.

On November 23, 2020, Kirkman moved for compassionate release. See [D.E. 85]. The government opposes the motion. See [D.E. 89].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the

2

safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

      (I) suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

      (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G.

---

percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

4

§ 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Kirkman seeks compassionate release. See [D.E. 85, 88]. Kirkman contends he exhausted his administrative remedies before filing this motion for compassionate release. See [D.E. 88] 3. The government has not invoked section 3582's exhaustion requirement. See [D.E. 89]; see also United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Kirkman's motion on the merits.

Kirkman (age 27) seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Kirkman cites the COVID-19 pandemic, his health condition, and his supportive family. See [D.E. 86, 88]. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Kirkman vaguely alleges he has a serious medical condition concerning his immune system, but he has not disclosed to the court what that condition is. See [D.E. 85] 37–44; [D.E. 88] 2. Moreover, Kirkman has refused the COVID-19 vaccine. See [D.E. 89-1]. The wide availability of COVID-19 vaccines reduces the weight of Kirkman's arguments regarding COVID-19 and his alleged health condition. Cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Kirkman makes no medical or other argument for why he is unable to receive the COVID-19 vaccine. Accordingly, reducing Kirkman's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Kirkman's alleged health condition are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, the wide availability of COVID-19 vaccines greatly diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803. Regardless, the section 3553(a) factors counsel against reducing Kirkman's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Kirkman is 27 years old and a violent criminal. See PSR ¶¶ 10–15. Kirkman is incarcerated for (1) attempted interference with commerce by robbery and aiding and abetting and (2) discharging

6

a firearm in furtherance of a crime of violence and aiding and abetting. See id. ¶¶ 1–7, 10–18. On April 12, 2016, Kirkman and his armed accomplice robbed at gunpoint a bank and a convenience store. See id. ¶¶ 10–11, 14. During the convenience store robbery, Kirkman and his accomplice threatened to kill the store clerk if she failed to obey their orders. See id. ¶ 10. To show they were serious, both robbers fired their guns inside the store. See id. ¶¶ 10, 14. Kirkman has completed some educational courses, has worked at least two jobs, and has only incurred one infraction while incarcerated. See [D.E. 88] 4–5.

The court also has considered Kirkman's rehabilitation efforts, potential exposure to COVID-19, and release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also recognizes Kirkman has a supportive fiancé. See [D.E. 88] 4. Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Kirkman's arguments, the government's persuasive response, and the need to punish Kirkman for his serious criminal behavior, to incapacitate Kirkman, to promote respect for the law, to deter others, and to protect society, the court denies Kirkman's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Kirkman's request for home confinement, see [D.E. 85] 46; [D.E. 88] 4, 6, Kirkman seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely

with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Kirkman requests that the court merely recommend home confinement to the BOP, the court declines. See [D.E. 85] 46. Thus, the court dismisses Kirkman's request for home confinement.

Kirkman also contends that incarceration while the COVID-19 pandemic is ongoing violates the Eighth Amendment. Kirkman's motion for compassionate release is not an appropriate vehicle for his Eighth Amendment claim. See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006); Farabee v. Clarke, 967 F.3d 380, 394–95 & n.10 (4th Cir. 2020); Wilborn v. Mansukhani, 795 F. App'x 157, 163–64 (4th Cir. 2019) (per curiam) (unpublished). To the extent Kirkman wishes to raise a claim that prison officials' deliberate indifference to his medical needs violated his Eighth Amendment rights, he must seek relief in a lawsuit pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). To the extent that Kirkman challenges the execution of his confinement and seeks immediate release from custody due to alleged Eighth Amendment violations, he must file a petition seeking habeas corpus relief under 28 U.S.C. § 2241. See Hill, 547 U.S. at 579; Farabee, 967 F.3d at 394–95 & n.10; Wilborn, 795 F. App'x at 163–64; United States v. Hartley, No. 5:13-CR-46-KDB-DSC-1, 2020 WL5550394, at *1 (W.D.N.C. Sept. 16, 2020) (unpublished). Thus, the court dismisses Kirkman's Eighth Amendment claim.

Alternatively, Kirkman has failed to show that the BOP officials' response to COVID-19 was (1) a deprivation of a basic human need [that] was objectively sufficiently serious, and" (2) that subjectively the "officials acted with a sufficiently culpable state of mind." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (quotation and alterations omitted); see Farmer v. Brennan, 511 U.S. 825, 834 (1994); Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016); Rish v. Johnson, 131

8

F.3d 1092, 1096 (4th Cir. 1997); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). "The Eighth Amendment does not require [the BOP] to take all conceivable steps to prevent the spread of COVID-19, provided their response to the virus remains reasonable." Hallinan v. Scarantino, 466 F. Supp. 3d 587, 607 (E.D.N.C. 2020). In fact, the BOP "ha[s] reasonably responded to the[] risks [of COVID-19] by limiting movement within FCC-Butner to essential activities, increasing cleaning practices, requiring use of masks, and educating inmates and staff about how the virus spreads. Even assuming social distancing is impossible in many situations at FCC-Butner, there is no evidence that [BOP officials] deliberately disregarded this risk. The fact that [the BOP's] response may prove inadequate to prevent the spread of COVID-19 does not establish" the BOP's deliberate indifference. Id. at 604–09; see, e.g., Wilson v. Williams, 961 F.3d 829, 839–44 (6th Cir. 2020); Swain v. Junior, 958 F.3d 1081, 1088–90 (11th Cir. 2020); United States v. Bland, No. PWG-15-141, 2020 WL 3546872, at *6 (D. Md. June 29, 2020) (unpublished); Blankumsee v. Hogan, No. PWG-20-1188, 2020 WL 2992531, at *2–5 (D. Md. June 4, 2020) (unpublished); Toure v. Hott, 458 F. Supp. 3d 387, 405–07 (E.D. Va. 2020); see also [D.E. 89] 3–4. Thus, the court dismisses Kirkman's Eighth Amendment claim.

II.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 85, 88], DISMISSES his request for home confinement, and DISMISSES WITHOUT PREJUDICE his Eighth Amendment claim.

SO ORDERED. This 19 day of October, 2021.

JAMES C. DEVER III
United States District Judge

9